UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

UNITED STATES OF AMERICA,      )
     )
        Plaintiff,      )
     )
     vs.      )      Case No. 1:13CR 67 SNLJ
     )
A. C. JACKSON,      )
     )
        Defendant.      )

## REPORT AND RECOMMENDATION

The defendant has filed three pretrial motions: (1) Defendant's Motion to Suppress Evidence from Search or Seizure (Document #21); (2) Defendant's Motion to Sever Counts (Document #22); and (3) Defendant's Motion to Suppress Statements (Document #24). The court will take up the motions in the order in which they were filed.

### Defendant's Motion to Suppress Evidence
### from Search or Seizure

The defendant requests in his motion that the court exclude from evidence any and all items obtained during the course of the execution of a search warrant dated March 29, 2013, for the reason that the warrant was issued in violation of the Fourth Amendment of the Constitution of the United States. As grounds, the defendant argued that the warrant lacked probable cause or a reasonable basis for authorizing the search, and further, that it was so lacking in providing a substantial basis for determining the existence of probable cause that no reasonable police officer could reasonably presume the warrant to be valid. (Document #21, p. 1).

**Factual Background**

On March 28, 2013, Wayne County Deputy Sheriff Travis Hanger responded to a report of a stolen firearm. Hanger went to the residence of Bob Eldridge and met with Eldridge and A. C. Jackson. Missouri State Highway Patrol Officer Kelly Barnett arrived shortly after Hanger. Jackson stated that he had purchased a .22 caliber, Speedmaster model rifle from Eldridge for $200.00. Jackson said he left the firearm at Eldridge's home. He said that Eldridge had told him that the rifle had been stolen by his nephew, Bobby Joe Jackson. Jackson said that he bought the firearm and hoped to sell it to make a profit on the sale. A. C. Jackson completed a written statement acknowledging that he purchased the firearm. Hanger did not know either A. C. Jackson nor Bobby Joe Jackson before this date.

Hanger spoke with Eldridge while all three men were standing together. Eldridge stated Bobby Joe Jackson had taken the firearm and Eldridge indicated that Bobby Joe Jackson had stolen it. Later, Hanger was able to speak with Eldridge when the two men were alone. Eldridge reported that Bobby Joe Jackson had come to his house and asked Eldridge for A. C. Jackson's rifle. Bobby Joe Jackson told Eldridge that he had heard that A. C. Jackson was going to shoot him and that he wanted to take the firearm to prevent that. Eldridge allowed Bobby Joe Jackson to take the firearm.

Trooper Barnett had run A. C. Jackson's criminal history through his dispatcher and had discovered that A. C. Jackson was convicted of several felony charges, including violent offenses. Barnett gave that information to Hanger. Hanger decided to contact Bobby Joe Jackson next rather than confront A. C. Jackson about his felony convictions and possession of a firearm.

Hanger left the Eldridge residence to contact Bobby Joe Jackson at his residence. Bobby Joe Jackson stated that he had heard that A. C. Jackson was going to shoot him, so he went to Eldridge's

house to get the .22 rifle. Bobby Joe Jackson knew that A. C. Jackson kept the rifle at Eldridge's home. Bobby Joe Jackson told Hanger that A. C. Jackson had other firearms at A. C. Jackson's home, including one firearm that accommodated multiple barrels ranging from a .243 caliber, to a .22 caliber to a 20 gauge shotgun.

Hanger went back to the Eldridge residence and spoke to A. C. Jackson about his having firearms as a felon. Jackson replied that he believed that he could buy the firearm so long as he didn't have possession of it in his house. Hanger asked if Jackson had any firearms in his house. Jackson said that he did not. Hanger asked for consent to search the home. Jackson denied that consent. Hanger placed Jackson under arrest for possession of the .22 rifle possession by a convicted felon. Hanger started transporting A. C. Jackson back to the jail. Hanger asked A. C. Jackson to show Hanger where Jackson lived. Jackson agreed to do so and directed Hanger to Bobby Joe Jackson's home. A . C. Jackson then told the deputy that the Bobby Joe Jackson home was his. Hanger did not tell A. C. Jackson that he knew that Jackson had identified an incorrect home as his address.

Hanger typed the search warrant package, including the search warrant affidavit, and took it to the Wayne County prosecutor's office for his review. The prosecutor reviewed it and told Hanger to take the package to Judge Shuller. Associate Circuit Judge Shuller reviewed the package, including the affidavit. He asked Hanger some questions about the investigation. Hanger told the judge some of the details of the investigation. Judge Shuller then signed the search warrant.

The search warrant affidavit contained the following factual statements to support a finding of probable cause to issue the warrant:

I, Travis Haynor, being first duly sworn deposes and states as follows:

1.      I am a member of Wayne County Sheriffs Department.  I am a certified peace officer in the State of Missouri and have been since 2011.  I have training in investigations and have been involved in investigations that have led to favorable conclusions.

2.      On Thursday, March 28, 2013, this Officer received information of possible stolen firearm from AC Jackson.  Upon investigating said report this Officer found the report to be false.  This Officer received information AC Jackson was to be a convicted felon and to be in possession of other firearms at his residence on Hurley DR, Wappapello, Missouri.  This Officer request Jackson to check his residence for firearms wherein he refused.  This Officer has reason to believe their are more firearms at Jacksons residence.  This Officer has a statement confirming presence of firearms and ammunition at this trailer.

Mr. Jackson asserts that this application for a search warrant was so lacking in probable cause that the warrant should not have been issued and that the good faith section does not apply.  He asserts that the warrant is defective as providing insufficient [information] for the issuing judge to determine that probable cause existed. (Document #21, p. 2).

Hanger then went to A. C. Jackson's home and searched it.  Several items were seized from that home, including ammunition and a multi-barreled firearm and extra barrels mentioned in Count II of the indictment.

### Probable Cause

The United States Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983).

The standard to be used by a judge reviewing the decision to issue a search warrant is different from the standard to be used by the judge who issues the search warrant. As the Supreme Court stated in Gates more fully, Id.:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736.

The Supreme Court rejected the prior tests required by Spinelli v. United States, 393 U.S. 410, 898 S.Ct. 584 (1969), finding that "the complex superstructure of evidentiary and analytical rules that some have seen implicit" in the Spinelli decision cannot be reconciled with the fact that many warrants quite properly are "issued on the basis of non-technical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." Id. at 235, 2331. The Court offered the following caution to reviewing courts, Id. at 236, 2331:

> Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Spinelli, supra, 393 U.S., at 419, 89 S.Ct., at 590. "A grudging or negative attitude by reviewing courts toward warrants," Ventresca, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner." Id., at 109, 85 S.Ct., at 746.

Probable cause is

a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons.  As we said in <u>Adams v. Williams</u>, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972):  "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability."  Rigid legal rules are ill-suited to an area of such diversity.

<u>Gates</u>, 462 U.S. at 232, 103 S.Ct. at 2329.

The Supreme Court found, 462 U.S. at 231, 103 S.Ct. at 2328, quoting from <u>Brinegar v. United States</u> (citation omitted), that the probable cause standard is a "practical, nontechnical conception" and "In dealing with probable cause, ... as the very name implies, we deal with probabilities.  These are not technical; they are the factual considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

As the Supreme Court stated in <u>Gates</u>, our review of the sufficiency of the affidavit should not take the form of a <u>de novo</u> review.

Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.  <u>United States v. Wallace</u>, 550 F.3d 729, 732 (8th Cir. 2008).

The second paragraph of the Affidavit of Deputy Hanger states, "This officer received information A. C. Jackson was to be a convicted felon and to be in possession of other firearms at his residence on Hurley Dr., Wappapello, Missouri."  Officer Hanger was informing the judge that A. C. Jackson was a convicted felon and was in possession of firearms at his residence.  He does not indicate the source of his information.  Deputy Hanger also relates that he requested permission from Mr. Jackson to check his residence for firearms.  Mr. Jackson refused.  Deputy Hanger also indicates that he has reason to believe there are more firearms at Jackson's residence and states that he has a

statement confirming the presence of firearms and ammunition at this trailer. Again, Deputy Hanger does not relate the source of his information or the reliability of the person making the statement confirming the presence of firearms and ammunition at the trailer.

The task of this court, set out in the <u>Gates</u> decision: "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... concluding' that probable cause existed." <u>Gates</u>, 462 at 238, 103 S.Ct. at 2332. The Supreme Court cautions the reviewing court to realize that any warrants quite properly are "issued on the basis of non-technical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." <u>Id</u>. at 235, 2331.

The government relies on <u>United States v. Murphy</u>, 69 F.3d 237 (8th Cir. 1995), in which the following statement in a search warrant affidavit was found to be sufficient to state probable cause.

> I, Tracy Sparrow, was told by a confidential informant that Michael Murphy who was recently released from Department of Corrections for murder was living at 907 W. 5th in Joplin, Missouri, that he had in his possession the above items and was threatening to kill a Jew. That I have checked and found that Michael Murphy was released from the Department of Corrections in 1992 for murder and is living at 907 W. 5th in Joplin, Missouri.

69 F.3d at 240.

The Court of Appeals for the Eighth Circuit found that although the affidavit was of the "bare bones" nature, it was still sufficient to establish probable cause. The <u>Murphy</u> court referred to the Supreme Court's statement in <u>Gates</u> citing the "value of corroboration of details of an informant's tip by independent police work," 462 U.S. at 241, 103 S.Ct. at 2334, in making a determination based on the totality of the circumstances. The deputy sheriff in the <u>Murphy</u> case did corroborate the allegation of the informant that Defendant Michael Murphy had been recently released from the

Department of Corrections and actually was living at 907 W. 5th in Joplin, Missouri.

In the instant case, Deputy Hanger did not indicate a corroboration for his statements that A. C. Jackson was a convicted felon and that there were more firearms at Jackson's residence.

In the Murphy case, the judge asked why Deputy Sparrow had used a confidential informant instead of naming the informant. Sparrow told the judge that the informant feared for his life if his real name was used. 69 F.3d at 240. The Circuit Judge in Jasper County then signed the search warrant.

The court finds that by itself, the affidavit of Deputy Hanger was insufficient to state probable cause for the issuance of the search warrant. However, under Gates, the task of a reviewing court is not to perform a de novo review, 462 U.S. at 238, 103 S.Ct. at 2332, but "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id.

How does a reviewing court know whether Judge Shuller had probable cause, "a fair probability that contraband or evidence of crime [would] be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332. This court does not believe that the affidavit by itself gave Judge Shuller probable cause; however, like the judge in the Murphy case, Judge Shuller asked questions before he signed the search warrant. Deputy Hanger testified at the evidentiary hearing, "When I spoke to Mr. Shuller I can't remember what words were exchanged, but I gave him the basic logistics of the case. I can't remember what he told me. And he signed the search warrant for me."

Deputy Hanger testified that Judge Shuller "asked me some questions but I don't remember what they were." (Tr., p. 33). The deputy also could not remember what Judge Shuller told him after he had given the judge "the basic logistics of the case." Id.

Although not spelled out in the affidavit, Deputy Hanger certainly had sufficient information

to have provided probable cause. He knew that A. C. Jackson was a convicted felon. Highway Patrolman Kelly Barnett had checked into Mr. Jackson's background and reported that Mr. Jackson was a convicted felon and had numerous armed criminal actions on his record. Deputy Hanger knew that Bobby Joe Jackson had told the deputy that A. C. Jackson, his uncle, had another firearm at his residence with multi-barrels interchangeable, .22 caliber, .243 caliber and a 20 gauge shotgun. The deputy took a statement from Bobby Joe Jackson in which Bobby Joe Jackson described his going to Bob Eldridge and asking for the gun A. C. Jackson had left with Mr. Eldridge. Bobby Joe Jackson said Bob Eldridge gave him the gun to get it out of his house. Deputy Hanger corroborated Bobby Joe Jackson's statement by speaking with Bob Eldridge privately. That corroboration indicated the reliability of Bobby Joe Jackson's statement that A. C. Jackson had a firearm at his house with interchangeable barrels, a part of his written statement.

As mentioned, Deputy Hanger certainly had sufficient credible information that, if it had been included in the affidavit, would have supported probable cause.

After Deputy Hanger and Judge Shuller spoke, Judge Shuller stated in the actual search warrant that he found probable cause, in the following words:

> Whereas, the Judge of this Court from the sworn allegations of said application and from the supporting written affidavit filed therewith has found that there is probable cause to believe the allegations of the application to be true and probable cause for the issuance of a search warrant herein;

(Government Exhibit #3, p. 1).

Judge Shuller thought he had probable cause. He said so in the form of the warrant. "The duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. Jones v. United States, 362 U.S. at 271, 80 S.Ct. at 736".

<u>Illinois v. Gates</u>, 462 U.S. 238, 103 S.Ct. 2332.

Judge Shuller signed the warrant. "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' <u>Spinelli</u>, <u>supra</u>, 103 U.S. at 419, 89 S.Ct. at 590." The <u>Gates</u> court continued, "'A grudging or a negative attitude by reviewing courts toward warrants,' <u>Ventresca</u>, 380 U.S. at 108, 85 S.Ct. at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'Courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner.'" It is not required that the affidavit supporting request for search warrant provide proof of criminal activity beyond a reasonable doubt or by preponderance of the evidence, only that it show a "probability" of criminal activity. <u>State v. Hill</u>, 854 S.W.2d 814, 819 (Mo.App. S.D. 1993).

Considering all the circumstances of Deputy Hanger's interaction with Judge Shuller, including the oral interchange, this court finds that Judge Shuller had a substantial basis for ... concluding that probable cause existed, that there was "a fair probability that contraband or evidence of crime [would] be found" in A. C. Jackson's residence. <u>Gates</u>, 462 U.S. at 238, 103 S.Ct. at 2332.

### <u>Good Faith under Leon</u>

Should a higher court find that the undersigned is incorrect in finding Judge Shuller had probable cause to issue a search warrant of A. C. Jackson's residence, this court believes that Deputy Hanger acted in good faith in relying upon the issuance of the search warrant. Under <u>Leon</u>'s good faith exception, the Fourth Amendment's exclusionary rule is not be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid. <u>United States v. Leon</u>, 468 U.S. 897, 104 S.Ct. 3405 (1984).

The Supreme Court in <u>Leon</u> explained its reasoning in reaching the good-faith exception as follows. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. <u>Leon</u>, 468 U.S. at 921, 104 S.Ct. 3405.

The <u>Leon</u> good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. <u>Leon</u>, 468 U.S. 923, 104 S.Ct. 3405.

There is no indication that Judge Shuller was misled by information which Deputy Hanger knew was false. There is no indication that Judge Shuller completely abandoned his judicial role.

With regard to the third reason for not applying the good-faith exception to the exclusionary rule, the affidavit included indicia of both the defendant's status as a convicted felon and that the firearm was in his home. The affidavit in itself did not establish the indicia of reliability for Deputy Hanger's information. Judge Shuller did not believe it was unreasonable to accept the affidavit as showing probable cause.

The fourth exception to the application of the <u>Leon</u> good-faith has no application under the circumstances of the present case, when the actions of Deputy Hanger are considered.

Deputy Hanger did his utmost to find out what the truth was about allegations that a rifle had been stolen from A. C. Jackson. He interviewed A. C. Jackson. He interviewed Bobby Joe Jackson, nephew of A. C. Jackson. He took written statements from both these witnesses. He interviewed Bob Elledge twice to get his story straight. He traveled twice to Bob Elledge's home and once to A. C. Jackson's home. He arrested A. C. Jackson. Even though he had never done it before, Deputy Hanger prepared the application for the search warrant and the affidavit supporting the application. He faxed the application and affidavit to the prosecuting attorney to get his approval. When told that the application and affidavit had been approved by the attorney for the county, he went to the prosecuting attorney's office and from there to Judge Shuller's office. He answered questions by Judge Shuller and supplied information Judge Shuller wished to have before Judge Shuller issued the search warrant. To the best of his ability, he had determined that A. C. Jackson was a convicted felon and, from his investigation, determined that a firearm was in the A. C. Jackson residence. He sought to get A. C. Jackson's consent to search before he sought the search warrant. All of the above efforts supported his good-faith belief in pursuing the search warrant and in its execution.

The Court of Appeals for the Eighth Circuit, in <u>United States v. Carpenter</u>, 341 F.3d 666 (2003), drew its own conclusions concerning the reasoning of the Supreme Court:

> The Court in <u>Leon</u> determined that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," and that "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." <u>Id</u>. at 916, 104 S.Ct. 3405. Accordingly, the Court drew a clear distinction between the motivations of detached, neutral magistrates and those of partisan enforcement officers who are "'engaged in the

often competitive enterprise of ferreting out crime.'" Id. at 914,
104 S.Ct. 3405.

341 F.3d at 669.

The Court, in Carpenter, quotes from Leon how the issuance of a warrant supports the

reasonableness of the search:

> "searches pursuant to a warrant will rarely require any deep inquiry
> into reasonableness," Illinois v. Gates, 462 U.S., at 267, 103 S.Ct.
> 2317, ... (WHITE, J., concurring in judgment), for "a warrant
> issued by a magistrate normally suffices to establish" that a law
> enforcement officer has "acted in good faith in conducting the
> search." United States v. Ross, 456 U.S. 798, 823, n. 32, 102 S.Ct.
> 2157, 72 L.Ed.2d 572, (1982).
>
> Leon, 468 U.S. at 922, 104 S.Ct. 3405 (extended internal
> citations omitted).

Carpenter, 341 F.3d 666.

This court finds that the good-faith exception expressed by the Supreme Court in Leon

applies to the execution of the search warrant by Deputies Hanger and Barnett on March 28,

2013, if a higher court should find that the application and affidavit of Deputy Hanger, along with

information provided to Judge Shuller, under the totality of circumstances did not provide Judge

Shuller with probable cause for the issuance of the search warrant. The physical evidence seized

as a result of the execution of the search warrant and personal effects and mail belonging to A. C.

Jackson should not be suppressed.

**Defendant's Motion to Sever Counts**

A. C. Jackson has filed a Motion to Sever Counts in which he asks that Count I be severed

from a trial of Count II of the Indictment. Both counts charge Jackson with Being a Felon in

Possession of a Firearm. Each count charges a different firearm that was possessed by Jackson on

a different day. Through his motion, Jackson alleges that he is prejudiced by a joinder of the two counts in that he would exercise his Fifth Amendment right not to testify in a trial dealing with only the allegations of Count I but intends to testify concerning the allegations of Count II. Jackson claims that joinder of the two counts would deny him due process of law and deny him a fair trial. The government asserts that joinder in these cases is proper and that this court should deny Jackson's motion to sever.

Different offenses may be charged as separate counts in the same indictment pursuant to Federal Rule of Criminal Procedure 8(a), which states:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Count I of the indictment charges that Jackson possessed a rifle that affected interstate commerce during a period of time from March 28, 2012, until March 28, 2013, while he was a previously convicted felon. Count II of the indictment charges that Jackson possessed a multi-caliber firearm that affected interstate commerce on or about March 29, 2013, while he was a previously convicted felon. The two counts are of the same character, with the same range of punishment, involving the same witnesses and involving the same facts which led to the seizure of the firearms.

Courts permit joinder when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence of each overlaps. United States v. Boyd, 180 f".3d 967, 981 (8th Cir. 1999). On the question of timing, Count II which charges possession of a firearm on March 29, 2013, follows chronologically immediately after Count I which charges

possession of a different firearm up to and including March 28, 2013. In United States v. Smith, 1997 WL 76194 (8th Cir. 1999), the time period over which the two counts occurred was ten months; in United States v. Rodgers, 732 F.2d 625, 629-30 (8th Cir. 1984), the time period was twenty months.

The factual background of both counts would be the same.

In the event that the two counts were tried separately, evidence of the count not on trial would be admissible in the trial of the other, either as direct evidence or as Rule 404(b) evidence. The evidence of Count I should be admissible as evidence in a separate trial of Count II to show the jury why the officers were investigating Jackson's possession of a second firearm. It would be virtually impossible to separate the evidence in these two cases into that which would only be admissible in Count I and not admissible in Count II. In considering that type of situation, this Circuit has stated:

> We have recognized that prejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately. On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.

Boyd, 180 F.3d at 981-82. "It is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993); See also, Layton v. South Dakota, 918 F.2d 739, 744 (8th Cir. 1990).

Considering that the same evidence would be admissible in separate trials of each count,

Jackson has not and cannot meet his burden of showing that he would have an appreciably better chance of an acquittal in a separate trial of each count. United States v. Midkiff, 614 F.3d 431 (8th Cir. 2010) (denial of severance of fraud and tax charges upheld where evidence proving each charge was admissible at the trial of the other charge as well).

Furthermore, since the evidence of the other crime would be admissible to prove Jackson's intent to possess a firearm, his preparation and plan to possess a firearm, his knowledge of his possession of a firearm and a lack of mistake or accident of possession on Jackson's part, pursuant to Rule 404(b), the same evidence would be admissible in two different trials if the two counts were tried separately, although some of that evidence would be direct evidence and some might be admissible as Rule 404(b) evidence.

Severance of counts is required on the basis that a defendant wishes to testify in the trial of one count, but not the other, "only when a defendant has made a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other. United States v. Mann, 701 F.3d 274, 291 FN9 (8th Cir. 2012), citing United States v. Jardan, 552 F .2d 216, 200 (8th Cir. 1977), quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968).

It is insufficient for a defendant to merely state that he is prejudiced by the joinder of the two cases for trial in that he intends to exercise his right under the Fifth Amendment to not testify with respect to the allegations in Count I and he does intend to exercise his right to testify with respect to the allegations in Count II and that failure to sever for trial the two charges will deny him the opportunity for a fair trial and thus deny him due process of law as the defendant has alleged. The Court of Appeals in the Smith case, supra, related the steps that defendant should

have taken:

> A court may order separate trials if the joinder of offenses prejudices a defendant. Fed.R.Crim.P. 14. Smith sought to sever all counts. The burden is on the defendant to make a "persuasive and detailed showing regarding the testimony he would give on the count he wishes severed and the reason he cannot testify on the other counts." United States v. Possick, 849 F.2d 332, 338 (8th Cir. 1988). Smith did not meet this burden because he merely

offered the general statement that he did not want to testify regarding count III because the testimony might be used by the state if it refiled murder charges against him, but that he wanted to testify regarding counts I and II. The district court did not abuse its discretion in denying Smith's severance motion.

1997 WL 76194 * 1.

> In Baker v. United States, 401 F.2d at 977, the D. C. Circuit became specific:

> > In making such a showing, it is essential that the defendant present enough information – regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other – to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

Defendant has not made such a showing. See also, United States v. McCarter, 596 F.3d 438, 442-43 (8th Cir. 2010).

Defendant's Motion to Sever Counts (Document #22) should be denied.

## Defendant's Motion to Suppress Statements

Defendant has filed his Motion to Suppress Statements (Document #24) asking that any statement made by him to any law enforcement officer after his arrest be suppressed. The defendant states that his statement was obtained in violation of his rights under the Fifth Amendment.

This motion was filed later than the other pretrial motions of the defendant, and the defendant explained the reason in his memorandum in support of his motion to suppress. The defendant related that after the pretrial motions had been filed, the attorney for the defendant was advised that the government acknowledged that defendant was questioned subsequent to his arrest by Special Agent David Diveley of the ATF. As the defendant's attorney pointed out in his memorandum, the government has the burden of showing that Mr. Jackson was properly advised of his rights under <u>Miranda</u> and that the statement was otherwise not coerced, before the statement can be introduced into evidence at the trial.

In the Government's Post-Hearing Memorandum (Document #42), the government related that on August 6, 2013, Special Agent David Diveley of the ATF went to the Wayne County Jail to arrest A. C. Jackson on the federal arrest warrant for the instant offense. A writ had been obtained for Mr. Jackson's presence in the United States District Court, but that writ was returnable on August 7, 2013. The Wayne County Prosecuting Attorney dismissed the state charges on August 6, necessitating that Diveley arrest Jackson on that date. The government alleges that when Diveley arrested Jackson, his state charges had been dismissed.

Agent Diveley met Mr. Jackson at the Wayne County Jail and informed him of the federal charge. Agent Diveley read Mr. Jackson the <u>Miranda</u> warnings using a pre-printed card for that purpose. (Tr., p. 65). Agent Diveley read into the record the warnings he gave Mr. Jackson from the card he used. (Tr., pp. 65-66). The last of the warnings was:

> However, you may waive your right to advice of an attorney and your right to remain silent, and you may answer questions or make a statement without consulting an attorney if you so desire.

(Tr., p. 66).

Diveley asked Jackson if he understood the warnings, and Jackson responded that he understood them.  Id.

Diveley was asked at the evidentiary hearing if he asked Mr. Jackson if he was willing to speak with Diveley.  Diveley responded that he did not ask Jackson, they just kept talking.

Jackson was in restraints in the back seat of the car.  Diveley described the conversation as "general conversation about the case that he was facing."  (Tr., p. 66).  At one point, Mr. Jackson stated that the gun found at his house was placed there by his nephew, Bobby Joe Jackson, and that the gun at Bob Elledge's house he admitted purchasing from Mr. Elledge.  Mr. Jackson said he never took physical possession of it, it was always left at Bob Elledge's house.  He admitted to shooting the rifle at one time.  (Tr., pp. 66-67).

The court finds the defendant voluntarily, knowingly and intelligently waived his rights under Miranda v. Arizona.

In the Government's Post-Hearing Memorandum (Document #42), the government referred to a matter that came up during the evidentiary hearing:

> Jackson developed a further argument during the evidentiary hearing that his statements were taken in violation of his Sixth Amendment right to counsel.  As the government understands his argument, Jackson contends that he had an attorney appointed to represent him for the state charges and Diveley's questions of Jackson violated his right to have his attorney present pursuant to the Sixth Amendment.

(Document #42, p. 12).

An Application for a Writ of Habeas Corpus ad Prosequendum had been filed, and the writ had been issued on July 26, 2013.  The writ called for the delivery of Mr. Jackson to the

United States District Court for the Eastern District of Missouri on Wednesday, August 7, 2013, for an initial appearance. At the time the writ was issued, Mr. Jackson was in the Wayne County Jail in Greenville, Missouri. The application and writ are parts of Document #4 listed on the docket sheet of the instant case and referred to at the evidentiary hearing but not filed as an exhibit. (Tr., pp. 64, 77).

On August 6, 2013, Agent Diveley went to Greenville, Missouri, to pick up Mr. Jackson with the writ. Agent Diveley testified, "We had a warrant for his arrest, and he was incarcerated at the Wayne County Jail at that time." Mr. Jackson was arrested by Agent Diveley at the Wayne County Jail. (Tr., pp. 63-64). After Jackson was arrested and changed out of his jail clothes into his own personal clothes, he was transported by Agent Diveley to the federal courthouse in Cape Girardeau, Missouri.

Government's Exhibit 4 is the docket sheet of the Circuit Court of Wayne County, Missouri. Page 2 of the docket sheet shows that Robert M. Ramshur, the Prosecuting Attorney of Wayne County, Missouri, entered a Nolle Prosequi in Cases No. 13WY-CR00165, 13WY-CR00317 and 13WY-CR00318. Pages 8, 9 and 10 of the docket sheet show that on August 6, 2013, Cases No. 13WY-CR00317 and 13WY-CR00318 were dismissed by the prosecutor by way of Nolle pros.

In its post-hearing memorandum, the government explained why ATF SA David Diveley went to the Wayne County Jail on August 6, 2013, to arrest A. C. Jackson on a federal arrest warrant for the instant offense. At that time, a writ had been obtained for Mr. Jackson's presence in the United States District Court, but that writ was returnable for August 7. The Wayne County Prosecutor dismissed his charges on August 6, necessitating that Diveley arrest Jackson on that

date. (Gov. Exh.). When Diveley arrested Jackson, his state charges had been dismissed. (Document #42, pp. 11-12).

At the end of the evidentiary hearing, the Assistant United States Attorney asked if the defendant was proceeding on the theory that the statement taken by Agent Diveley was in violation of Mr. Jackson's Sixth Amendment right to counsel. The Assistant United States Attorney said that if the defendant was proceeding on a Sixth Amendment claim, then the government needed to call another witness, "because that case was dismissed on the 6th, so he didn't have an attorney or a case pending at the time. That's why the arrest occurred." (Tr., p. 79). The Assistant United States Attorney said that he would bring someone over from the clerk's office from Wayne County to testify to the fact that the state case was dismissed and Mr. Jackson did not have an attorney or a case pending in Wayne County at that time.

The following exchange occurred:

>MR. TILSEN: Actually, I was, Your Honor, but I would accept – if the United States has a document to submit, we don't have to have someone come over from Wayne County.

>MR. SORRELL: If I faxed over a docket sheet that would be sufficient?

>MR. TILSEN: Okay. That would work for me.

(Tr., pp. 79-80).

The docket sheet was submitted and admitted into evidence as Government's Exhibit 4 on September 11, 2013.

The court finds that the state case or cases alleging the same charges as the indictment in the instant matter in federal court had been dismissed by nolle pros on August 6 and the

defendant, A. C. Jackson, was not facing those charges in Wayne County, Missouri, on that date. As a result, he did not have an attorney in a previously pending case or cases, when he was interviewed by Agent Diveley.

Again, if the state charge or charges were still pending, which the court finds is not the case, the Supreme Court in <u>Montejo v. Louisiana</u>, 556 U.S. 778, 129 S.Ct. 2079 (2009), (as quoted by the government in its post-hearing memorandum (Document #42) at page 13) held that even if a person is being represented by an attorney, the person may waive his Sixth Amendment rights. The Court stated:

> Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. (Citations omitted) The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. (Citation omitted)

The Court continued,

> And when a defendant is read his <u>Miranda</u> rights (which include the right to have counsel present during interrogation) and agree to waive those rights, that typically does the trick, even though the <u>Miranda</u> rights purportedly have their source in the Fifth Amendment: "As a general matter ... an accused who is admonished with the warnings prescribed by this Court in <u>Miranda</u> ... has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." (Citation omitted)

<u>Montejo</u>, 556 U.S. at 786-87.

Defendant's Motion to Suppress Statements (Document #24) should be denied.


**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence

from Search or Seizure (Document #21); Defendant's Motion to Sever Counts (Document #22); and Defendant's Motion to Suppress Statements (Document #24) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of November, 2013.